UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| GOVERNMENT EMPLOYEES INSURANCE CO. ("GEICO"), et al., <br><br>        Plaintiffs, <br><br>     v. <br><br>BARRY A. KORN, D.O., et al., <br><br>        Defendants. | HONORABLE JOSEPH E. IRENAS <br><br> Civil No. 14-5742 (JEI/KMW) <br><br> **OPINION** |

**APPEARANCES:**

RIVKIN RADLER LLP
By:  John Robertelli, Esq.
     Patricia E. Doran, Esq.
21 Main Street, Suite 158
Court Plaza South, West Wing
Hackensack, New Jersey 07601
        Counsel for Plaintiffs


WEBER GALLAGHER SIMPSON STAPLETON FIRES & NEWBY LLP
By:  Laurence T. Bennett, Esq.
     Ryan J. Mowll, Esq.
305 Fellowship Road, Suite 200
Mount Laurel, New Jersey 08054
        Counsel for Defendants Edward F. McMenamin and
        Curamed, LLC


FLYNN & ASSOCIATES, P.C.
By:  Thomas F. Flynn, III, Esq.
     Frank Brennan, Esq.
2091 Springdale Road, Suite 2
Cherry Hill, New Jersey 08003
        Counsel for Defendants Russell I. Abrams, M.D., and
        Neurology Pain Associates, P.C.

1

HOLSTON, MACDONALD, UZDAVINIS, ZIEGLER, LODGE & MYLES, P.C.
By:  Teri S. Lodge, Esq.
     William F. Ziegler, Esq.
66 Euclid Street
Woodbury, New Jersey 08096
          Counsel for Defendants Alfred Tawadrous, M.D., and
          Primary Care & Rehabilitation, P.C.


**IRENAS,** Senior United States District Judge:

     Plaintiffs Government Employees Insurance Co. ("GEICO")[1]

claim that Defendants-- (1) Mr. Edward McMenamin and Curamed,

LLC; (2) Dr. Russell Abrams and Neurology Pain Associates, P.C.;

and (3) Dr. Alfred Tawadrous and Primary Care & Rehabilitation,

P.C.[2]-- conspired to commit large-scale and coordinated insurance

fraud by routinely billing GEICO for medically unnecessary, or

nonexistent, services provided to Defendants' patients who are

GEICO's insureds.

     As the many cases cited *infra* will demonstrate, Defendants'

alleged fraudulent scheme is not a novel one, nor are the legal

claims asserted against Defendants.  Nonetheless, the Defendants

all presently move, pursuant to Fed. R. Civ. P. 12(b)(6), to

dismiss the federal RICO claims asserted against them.

---

[1]  Specifically, there are four Plaintiffs: Government Employees
Insurance Co., GEICO Indemnity Co., GEICO General Insurance
Company, and GEICO Casualty Co.  All parties refer to Plaintiffs
collectively as "GEICO."  The Court will do the same.

[2]  Defendant Dr. Barry A. Korn, D.O., was dismissed with
prejudice from this suit on March 11, 2015.

2

Defendants Dr. Abrams and Neurology Pain, as well as Defendants Dr. Tawadrous and Primary Care, also raise additional arguments, including GEICO's failure to join its insureds as "interested parties."

For the reasons stated herein, Defendants' Motions will be denied in their entirety.

## I.

The extent of the alleged fraudulent scheme-- which allegedly began "as early as 2005," Compl. ¶ 6-- is very large. GEICO seeks to recover more than $2.5 million in paid claims, and seeks a declaration that it is not obligated to pay an additional $3.1 million in pending claims.  All claims allegedly arise out of fraudulent services provided, or purportedly provided, to Defendants' patients who have no-fault automobile insurance policies with GEICO.

Defendant McMenamin-- who, significantly, is not a licensed physician-- allegedly was the orchestrator of the fraud. Through his limited liability company, Curamed, McMenamin allegedly directed the fraudulent activities of Defendants Neurology Pain, and Primary Care which were the medical practices treating or purporting to treat patients involved in automobile accidents, and submitting the fraudulent claims to GEICO.

Defendants Dr. Abrams and Dr. Tawadrous are alleged to be the nominal or "paper owners" of Neurology Pain and Primary Care respectively, although the Complaint asserts that the true owner of both are Defendants McMenamin and Curamed. Doctors Abrams and Tawadrous are alleged to have "sold the use of [their] medical license[s]," Compl. ¶¶ 56, 78, to McMenamin and Curamed so that McMenamin and Curamed could secretly and unlawfully own and control the medical practices.[3] The doctors treated-- or purported to treat-- the patients, and allegedly received "a salary or some other form of compensation," Compl. ¶ 51, in return.

The scheme allegedly operated in the following manner.

Neurology Pain and Primary Care did not "advertise or market [their] services to the general public." Compl. ¶ 85. Instead, patients came to them either through referrals from personal injury attorneys, or "through illegal kickback and self-referral arrangements between and among Neurology Pain and Primary Care." Compl. ¶ 86.[4] The referrals themselves are

_____

[3] Under New Jersey law, with limited exceptions not applicable here, only licensed physicians may own and control a medical professional corporation. *See* N.J.A.C. 13:35-6.16(e); N.J.A.C. 13:35-6.16(f).

[4] The Complaint specifically identifies 98 allegedly illegitimate referrals from Neurology Pain to Primary Care, Compl. ¶ 93, and 13 similar referrals from Primary Care to Neurology Pain, Compl. ¶ 94.

4

alleged to be medically unnecessary insofar as GEICO asserts that many of the insureds were involved in relatively minor accidents that did not result in "any significant injuries or health problems." Compl. ¶ 99.

Once referred to the medical practices, the treatment insureds received is alleged to have been provided "without regard for [their] individual presentment or symptoms," Compl. ¶ 81, but rather, "pursuant to a pre-determined, fraudulent protocol designed to maximize the billing" of GEICO. Compl. ¶ 80.

The alleged misrepresentations made pursuant to the protocol include, *inter alia*:

- Exaggerating the severity of patients' injuries, Compl. ¶¶ 102-03;

- Grossly overstating the amount of time doctors spent in face-to-face time with patients, Compl. ¶¶ 104-05;

- Stating that "comprehensive" and "detailed" patient histories were taken when they were not, Compl. ¶¶ 106-13;

- Stating that "comprehensive" and "detailed" examinations were performed when they were not, Compl. ¶¶ 116-22; and

- Overstating the complexity of the medical decisionmaking, Compl. ¶ 128.

The misrepresentations were then allegedly covered-up by phony medical reports containing "boilerplate 'diagnoses'" such

as "myofascial pain syndrome," "tendonitis," "occipital neuralgia," "herniated disc," or "bulging disc." Compl. ¶ 135.

GEICO asserts that the falsity of these diagnoses and reports may be inferred from the alleged facts that (a) "large numbers" of the reports contain large amounts of "identical information" that appear to be "cut-and-pasted" from one report to the next, Compl. ¶ 138-41[5]; (b) the diagnoses were "in many cases contravened by contemporaneous hospital records, police reports, or records from other treating providers" Compl. ¶ 142[6]; and (c) diagnoses of sprains or strains were, "in many cases," made "months or even years" after accidents occurred, and long after "any genuine problems . . . would have resolved," Compl. ¶ 143[7].

The fake reports were then allegedly used to support further unnecessary treatment. Treatments provided by Primary Care included "follow-up examinations, trigger point injections, 'spray and stretch' treatments, and PENS sessions." Comp. ¶¶ 136, 144. Treatments provided by Neurology Pain included brain-mapping, brainstem auditory evoked potential ("BAEP") tests, and visual evoked potential ("VEP") tests. Compl. ¶ 207.

---

[5]  The Complaint gives four specific examples.

[6]  The Complaint gives five specific examples.

[7]  The Complaint gives ten specific examples.

With respect to the trigger point injections, GEICO cites testimony of four insureds who stated under oath that they did not receive trigger point injections on certain dates, or in certain places, yet GEICO asserts that Primary Care billed GEICO for those treatments.  Compl. ¶ 183.

Likewise, as to the "spray and stretch" treatments, GEICO cites testimony of five insureds who stated under oath that they did not receive spray and stretch treatments on certain dates, yet GEICO asserts that Primary Care billed GEICO for those treatments.  Compl. ¶ 206.

HCFA-1500 forms are the forms Defendants used to bill GEICO.  GEICO alleges that "thousands" of these forms submitted by Defendants to GEICO were false and misleading in three material respects: (1) they represented that Primary Care and Neurology Pain were in compliance will "all significant qualifying requirements of law," Compl. ¶ 226, when they were not, because Primary Care and Neurology Pain were owned and controlled by a non-physician; (2) they billed for medically unnecessary treatments; and (3) they billed for treatments and services that were never provided.

The Complaint asserts New Jersey common law claims for fraud, aiding and abetting fraud, and unjust enrichment.  It also asserts violations of the New Jersey Insurance Fraud

Prevention Act, N.J.S.A. 17:33A-1 et seq., and the federal RICO statute, 18 U.S.C. §§ 1962(c) and (d).

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2). While a court must accept as true all factual allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

8

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Additionally, Federal Rule of Civil Procedure 9(b) provides, "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud."  The rule "exists to insure adequate notice so that defendants can intelligently respond."  *Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 233 (3d Cir. 2011); *see also Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003) ("The purpose of Rule 9(b) is to provide notice, not to test the factual allegations of the claim.").

## III.

The Court first addresses the RICO challenges raised by all moving Defendants, and then addresses the additional arguments.

### A.

As to the RICO claims, Defendants make three arguments: (1) the Complaint fails to state a claim for RICO violations; (2) GEICO lacks standing to assert RICO claims; and (3) the RICO allegations are not sufficiently particularized.  All three arguments fail.

18 U.S.C. § 1962(c) provides, "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

The Supreme Court stated in *Sedima v. Imrex Co.*,

> [a] violation of § 1962(c), . . . requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The plaintiff must, of course, allege each of these elements to state a claim. Conducting an enterprise that affects interstate commerce is obviously not in itself a violation of § 1962, nor is mere commission of the predicate offenses. In addition, the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.

473 U.S. 479, 496 (1985).

Defendants' arguments as to the sufficiency of the factual allegations are either non-specific and conclusory, or misstate GEICO's theory of its case.[8]  The Complaint adequately alleges

---

[8]  Defendants claim that the alleged violations of New Jersey law which prohibit non-physicians from owning and controlling medical practices cannot be the predicate acts of the RICO violation.  But the Complaint and GEICO's opposition briefs make clear that the alleged predicate act is federal mail fraud, not any violation of New Jersey law.

The asserted New Jersey law violations are one theory of three supporting the alleged fraudulent nature of Defendants' insurance claims.  GEICO asserts that it would not have paid the claims at issue had it known that: (1) Primary Care and Neurology Pain were owned and controlled by a non-physician; or (2) the claimed treatments were medically unnecessary; or (3)

facts supporting the predicate acts of racketeering, namely, mail fraud in the submission to GEICO of thousands of knowingly false HCFA-1500 forms.  Many other courts have held the same in cases involving very similar facts.  *See, e.g., State Farm Mutual Automobile Ins. Co. v. Louis N. Radden, D.O., et al.,* No. 14-13299, 2015 U.S. Dist. LEXIS 17788 at *4-5 (E.D. Mich. Feb. 13, 2015)("State Farm sufficiently states a substantive racketeering claim under RICO. . . . [T]he complaint describes a scheme involving nearly 700 acts of mail fraud involving a like number of fraudulent claims that occurred over a three year period."); *GEICO, et al. v. Eva Gateva, M.D., et al.,* No. 12-cv-4236, 2014 U.S. Dist. LEXIS 44878 at *14-18 (E.D.N.Y. March 10, 2014)("Plaintiffs allege that Gateva agreed to conduct or participate in the conduct of the RICO enterprises' affairs through a pattern of ongoing activity consisting of repeated violations of the federal mail fraud statute by submitting or

---

the claimed treatments were not actually provided to patients. *Cf. GEICO, et al. v. Jacob Esses, M.D., et al.,* 2013 U.S. Dist. LEXIS 184213 at *18 (E.D.N.Y. Sept. 27, 2013)("As illegal owners and operators of improperly licensed providers of medical services, the defendants materially misrepresented that they were in fact entitled to reimbursement."); *Allstate Ins. Co., et al. v. Timothy J. Weir, D.C., et al.,* No. 5:07-cv-498, 2008 U.S. Dist. LEXIS 91270 at *22 (E.D.N.C. Nov. 10, 2008) ("Allstate does not seek to recover per se under a fraudulent incorporation claim in violation of the Professional Corporation Act; rather Allstate argues that defendants misrepresented their corporate status and that this misrepresentation forms an element of Allstate's common law fraud claim.").

causing to be submitted numerous fraudulent bills seeking payment from GEICO.")[9]; *GEICO et al. v. Jacob Esses, M.D., et al.,* No. 12-4424, 2013 U.S. Dist. LEXIS 184213 at *18 (E.D.N.Y. Sept. 27, 2013)("The defendants' numerous mailings of fraudulent insurance claims to Geico in connection with the schemes thus constitute the predicate acts of racketeering activity that establish violation of [RICO].")[10]; *Allstate Ins. Co. et al. v. Peter Mario Balle, D.C.,* No. 2:10-cv-2205, 2013 U.S. Dist. LEXIS 129134 (D. Nev. Sept. 9, 2013); *Allstate Ins. Co. et al. v. Tacoma Therapy, Inc., et al.,* No. C13-5214, 2013 U.S. Dist. LEXIS 126399 (W.D. Wash. Sept. 4, 2013); *GEICO, et al. v. Hollis Medical Care, P.C., et al.,* No. 10-cv-4341, 2011 U.S. Dist. LEXIS 130721 at *22-26 (E.D.N.Y. Nov. 9, 2011); *Allstate Ins. Co., et al., v. Valley Physical Medicine & Rehabilitation, P.C., et al.,* No. 05-5934, 2009 U.S. Dist. LEXIS 91291 at *26-27 (E.D.N.Y. Sept. 30, 2009); *State Farm Mutual Automobile Ins. Co. v. Semion Grafman, et al.,* 655 F. Supp. 2d 212, 226-28 (E.D.N.Y. 2009); *Allstate Ins. Co., et al. v. Timothy J. Weir, D.C., et al.,* No. 5:07-cv-498, 2008 U.S. Dist. LEXIS 91270 (E.D.N.C. Nov. 10, 2008); *State Farm Mutual Automobile Ins. Co. v. Valery*

---

[9]  Magistrate's Report and Recommendation adopted by 2014 U.S. Dist. LEXIS 42648 (E.D.N.Y. March 30, 2014).

[10]  Magistrate's Report and Recommendation adopted by 2013 U.S. Dist. LEXIS 158424 (E.D.N.Y. Nov. 5, 2013).

*Kalika, M.D., et al.,* No. 04-cv-4631, 2006 U.S. Dist. LEXIS 97454 (E.D.N.Y. March 16, 2006)[11]; *AIU Ins. Co., et al. v. Olmecs Medical Supply, Inc., et al.,* No. 04-cv-2934, 2005 U.S. Dist. LEXIS 29666 at *29-40 (E.D.N.Y. Feb. 22, 2005); *State Farm Mutual Ins. Co., et al. v. Red Lion Medical Center, Inc., et al.,* No. 95-2542, 2003 U.S. Dist. LEXIS 12150 (E.D.Pa. June 20, 2003); *State Farm Mutual Ins. Co. v. Anthanasios Makris, et al.,* No. 01-5351, 2003 U.S. Dist. LEXIS 3374 (E.D.Pa. March 4, 2003).

The Complaint also alleges facts supporting GEICO's standing to assert the RICO claims.  GEICO alleges that it suffered damages of more than $2.5 million by paying fraudulent claims.  If proven true, the alleged facts support a conclusion that Defendants' RICO violations proximately caused GEICO's business losses.  *See Holmes v. Security Investor Protection Corp.,* 503 U.S. 258 (1992)(holding that a RICO plaintiff must demonstrate not only "but for" causation but also proximate cause in order to have standing); *see also Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451 (2006) (applying the *Holmes* test for RICO standing).  Other courts have sustained RICO standing of insurance companies on very similar facts.  *See Peter Mario Balle, D.C.,* 2013 U.S. Dist. LEXIS 129134 at *6-7; *Semion Grafman, et al.,* 655 F. Supp. 2d at 228-30; *Allstate Ins. Co.,*

---

[11]  Magistrate's Report and Recommendation.

*et al. v. St. Anthony's Spine & Joint Institute, P.C., et al.*, 691 F. Supp. 2d 772, 790-91 (N.D.Ill. 2010).

Lastly, Defendants' Rule 9(b) arguments are meritless.

First, the Complaint gives numerous specific examples of Defendants' allegedly fraudulent conduct-- complete with dates, patient identifiers, diagnoses, and the type of treatment involved.  The Complaint also identifies allegedly fraudulent billing codes ("CPT codes").

Second, attached as exhibits to the Complaint are voluminous spreadsheets, itemizing specific bills by provider, claim number, and date.  The spreadsheets contain 16,961 individual entries, each of which GEICO contends is a mail fraud event.

McMenamin and Curamed's related argument that they are not alleged to have committed the fraudulent billing is also meritless.  As GEICO's counsel detailed at oral argument, several specific factual allegations plausibly support the conclusion that McMenamin and Curamed owned and controlled the professional corporations and directed the fraudulent scheme. *See* Compl. ¶¶ 55-79.

Defendants' Motions to Dismiss the RICO claims will be denied.

**B.**

14

**1.**

All of the Defendants except McMenamin and Curamed argue that GEICO's individual insureds are "required parties" under Fed. R. Civ. P. 19.  The Court disagrees.

First, except in a narrow set of circumstances not implicated here,[12] failure to join a necessary party is not a ground for dismissal; other remedies for such a defect exist.

Second, it is not clear that Defendants, in support of their own Motion to Dismiss, can raise this issue on the absent insureds' behalf.[13]

More to the point, however, the Court holds that the insureds' asserted "interest" in this suit is not of the type requiring joinder under Rule 19.   The Rule provides, in relevant part:

---

[12]  *See* Fed. R. Civ. P. 19(b) ("If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.").

[13]  Some courts have questioned whether a party other than the absent party can raise a Rule 19(a)(1)(B)(i) claim because the Rule states that "[a] person . . . must be joined as a party if . . . *that person* claims an interest relating to the subject of the action." (emphasis added).  *See Alpho Pro Tech, Inc. v. VWR Int'l LLC*, 984 F. Supp. 2d 425, 459 (E.D. Pa. 2013) ("Leaving to one side the issue of whether the Rule's plain text permits the moving defendant to invoke the absent party's interest . . .."); *see also ConnTech Dev. Co. v. Univ. of Conn. Educ. Properties, Inc.*, 102 F.3d 677, 683 (2d Cir. 1996) (holding that the absent party must claim the interest). In light of the disposition of the Motion, the Court need not definitively rule on this issue.

> A person . . . must be joined as a party if: . . .
> that person claims an interest relating to the subject
> of the action and is so situated that disposing of
> the action in the person's absence may: as a practical
> matter impair or impede the person's ability to
> protect the interest.

Fed. R. Civ. P. 19(a)(1)(B)(i) (emphasis added).

The interest protected by Rule 19(a)(1)(B)(i) is not as broad as Defendants assert. Not any abstract or vague interest will do. Rather, the interest must be "relat[ed] to the subject of the action," *id.*, and "a legally protected interest," "not merely a financial interest." *Liberty Mutual Ins. Co. v. Treesdale, Inc.,* 419 F.3d 216, 230 (3d Cir. 2005) (*quoting Spring-Ford Area School District v. Genesis Ins. Co.*, 158 F. Supp. 2d 476, 483 (E.D. Pa. 2001)).

Additionally, the interest must be "practical[ly]" -- not theoretically-- impaired or impeded by a disposition in the person's absence, Fed. R. Civ. P. 19(a)(1)(B)(i), and the impairment must be "direct and immediate," "not speculative." *Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*, 723 F. Supp. 2d 676, 691 (D. Del. 2010) (*citing Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 407-09 (3d Cir. 1993)).

Defendants have not demonstrated[14] that the absent insureds'
interest meets any of these requirements.

The insureds' interest is not related to the subject of
this action.  Defendants argue that GEICO's suit somehow
intervenes in the doctor-patient relationship.  The Court fails
to see how this is so.  The subject matter of this suit is not
the doctors' treatment of individual patients, but rather
Defendants' alleged coordinated fraudulent billing of GEICO.

Additionally, whatever interest the insureds may have
appears to be adequately represented by GEICO or the Defendant
doctors.  See *Ohio Valley Envtl. Coalition v. Bulen*, 429 F.3d
493, 504-05 (4th Cir. 2005)(absent parties were not necessary
parties because their interests were identical to those of the
existing parties); *see also J.P. Morgan Chase Bank, N.A. v.
McDonald*, 760 F.3d 646, 653 (7th Cir. 2014)("To the extent the
employees have an interest in the present lawsuit, it is
identical to their employer's: an end to the arbitration. This
interest will therefore be protected whether or not the
individual employees are parties to this suit.").

GEICO has an insurer-insured relationship with the
absentees, and the Defendants have a doctor-patient relationship

---

[14]  *See Pittsburgh Logistics Sys., Inc. v. C.R. Eng., Inc.*,
669 F. Supp. 2d 613, 618 (W.D. Pa. 2009) ("The moving party
bears the burden of showing that a non-party is both necessary
and indispensable.").

with the absentees.  The Defendants have not demonstrated that the contractual, legal, or ethical duties attendant to these relationships will not ensure that the absentees' interests are adequately represented.

Accordingly, Defendants' Motion on this ground will be denied.

## 2.

Dr. Abrams asserts that the Complaint fails to allege that he, individually, has engaged in any fraudulent conduct. According to Dr. Abrams, "absolutely nothing of substance is alleged against [him] except being the licensed owner of a medical practice allowed under current New Jersey law."  (Moving Brief, p. 12)

This argument is meritless.  The Complaint alleges that Dr. Abrams, himself:

- provided medically unnecessary treatment to patients, Compl. ¶¶ 10 ("Defendant Abrams . . . purported to perform many of the Fraudulent Services at Neurology Pain."), 207-09 ("Abrams . . . purported to subject many Insureds to . . . "medically useless . . . 'BAEP' . . . [and] . . . 'VEP' tests.");[15]

- knowingly, and secretly, "sold" his medical license for use by a non-physician, Compl. ¶ 56;

---

[15] The Complaint apparently uses the term "purported" because it alleges that on certain occasions no services were provided at all.

- caused Neurology Pain to enter into various agreements with Curamed "thereby enabling [Curamed and McMenamin] to maintain total control over" Neurology Pain, Compl. ¶¶ 58-62[16]; and

- caused Neurology Pain to submit fraudulent bills to GEICO, Compl. ¶ 225.

The Motion on this ground will be denied.[17]

### 3.

Contrary to Dr. Abrams' and Neurology Pain's argument, the Complaint does state a claim for violation of the New Jersey Insurance Fraud Prevention Act.

The relevant portion of the Act-- which Dr. Abrams notably fails to address-- provides,

a. A person or a practitioner violates this act if he: (1) Presents or causes to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy . . . , knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or . . . (3) Conceals or knowingly fails to disclose the occurrence of an event which affects any person's initial or continued right or entitlement to

---

[16] In particular, the Complaint alleges that Curamed made a loan to Neurology Pain that was secured by "all of Neurology Pain's accounts receivable." Compl. ¶ 62.

[17] The Court also rejects Dr. Abrams' related argument that the fraud allegations are not sufficiently particularized. As should be readily apparent from the Court's discussion at sections III. A., and III., B., 2., the Complaint pleads fraud with the requisite specificity to achieve the notice function of Fed. R. Civ. P. 9(b).

> (a) any insurance benefit or payment or (b) the amount of any benefit or payment to which the person is entitled. . . .

N.J.S.A. 17:33A-4(a)(1), (3).

The Complaint alleges that Dr. Abrams caused Neurology Pain to submit claims to GEICO for medically unnecessary services, which states a claim for violation of subsection (a)(1).

The Complaint also alleges that Dr. Abrams sought to conceal Neurology Pain's ineligibility to receive insurance payments (by virtue of being owned and controlled by a non-physician), which states a claim for violation of subsection (a)(3).

The Motion on this ground will be denied.

**4.**

GEICO may seek declaratory relief.  Dr. Abrams' and Neurology Pain's argument to the contrary is unclear and unsupported.  They assert that "the statute does not create causes of action," (Moving Brief, p. 24), but GEICO does not assert that it does.

The Motion on this ground will be denied.

**5.**

Dr. Abrams and Neurology Pain argue that "the movants are not parties to any illegal kickback scheme."  (Moving Brief, p. 16)  The Court fails to discern the legal significance of this argument.

First, simple denial of an alleged fact is not a ground for dismissal under Fed. R. Civ. P. 12(b)(6).

Second, the legal significance of the alleged kickback scheme itself-- which refers to the self-referral arrangement between Primary Care and Neurology Pain-- is not apparent. GEICO specifically states that the kickback scheme is not the asserted predicate act of the RICO claims.  (Opposition brief, p. 21)

Nor is it clear how the alleged kickback scheme would be an element of any of the other claims GEICO asserts against Dr. Abrams and Neurology Pain.

The Motion on this ground will be denied.


**6.**

Lastly, the argument that Dr. Abrams and Neurology Pain "are unable to disgorge funds that were received by other defendants" (Moving Brief, p. 12), is meritless insofar as GEICO does not appear to seek such relief.

The Motion on this ground will be denied.

**IV.**

Based on the foregoing, the Motions to Dismiss will be denied in their entirety.  An appropriate Order accompanies this Opinion.


Date:  September 14, 2015


                                        _ s/ Joseph E. Irenas_____
                                        JOSEPH E. IRENAS, S.U.S.D.J.